on any area of the case that are of interest to the court. Let me just make it very clear for the record we are moving on to the next case. This is 24-11032 United States v. Ortiz. Mr. Page. Thank you, Your Honor. Forgive me for jumping the gun there. So, left to my own devices here, I would perhaps ambitiously attempt to discuss all three issues that are discussed in the reply brief. The Rule 615 issue, 404 issue about the death of M.K. and sufficiency. We'll see if that's ambitious. I would actually like to begin with the Rule 615 issue because I think we could clear up some fundamental disagreements there. Fundamentally, if you don't mind, just because the sufficiency in the 404B interests me, and I imagine your time's going to get pressed, and you were nice to say we could sort of derail you. On sufficiency, the government had two rebuttal witnesses that both said the Army Surgical Tech and then Ms. Banks, and they both said that as to your client, he's never gone to the warmer to help get the IVs or to fill up multiple syringes in a pre- I think I'm correct, and I think I'm correct that there was no cross of either of them. So, if that's true, and the jury then saw the video showing that he actually did go to the warmers, wouldn't that alone be enough? No, that would not be enough. That would, for a few reasons. The first is that that's rebuttal evidence, and so it's after the first Rule 29 issue, so we still have to evaluate the evidence up to that first Rule 29. The second is, fundamentally, that is a person that is behaving differently than they usually behave in that case, but it is not by itself suspicious or even necessarily more than suspicious for a doctor to fill a warmer or to fill- But you remember in closing argument, you did say the videos were suspicious. Okay. You told the jury they're suspicious. He is the only person caught red-handed putting bags into the warmer before an emergency. That was defense argument. Okay. So, suspicion, this is Ganji and any number of cases that Ganji cites, that suspicion is not a proper basis for- Well, that video that showed the crack through the door where he put the bag in, it was the only one visible, no one else touched the warmer until they came, the nurse, whoever came in and took that bag out, and that bag caused injury. Well, we don't know that that bag caused injury, but on page 21 of the brief, if the court will, cares to look at the red brief there, you'll notice that when Dr. Ortiz puts the bag in, there's a shelf visible, and then when the nurse takes the bag out, the shelf disappears. Nobody disassembled the bag in the meantime, and what that shows us is that merely by changing the angle at which we open that warmer door or close that warmer door, it can make objects appear to appear or disappear. Ultimately, what that is, I don't agree that that shows that the bag is visible or that we know that that shows that the bag is visible. What that shows there is a spot of light, which is present, which you can see during the first time the warmer is open, which you cannot see after the bag that the nurse pulls that away. That's a far cry from being able to see the contour of an object and be clear that that is the same object when the door could be opened at a different angle, the objects could be jostled, et cetera. Does that go to evidence or the weight? That, well, I mean, it might go to only to the weight if that theory were presented to the jury. I mean, no question, no testimony, no argument anywhere made by the government argues that you can see the bag through the slit of the warmer to the jury, so there's no jury finding about that. In your reply, you had the photos from the videos, and then on page 13, you said most the video evidence would authorize the government to pat a felon down, maybe to conduct a search. Okay, so if you're agreeing the video provides probable cause to conduct a search, why wouldn't that alone, your own characterization of the video, be enough to sustain a verdict? Because evidence that enables the... Probable cause to commit a crime? Because evidence of probable cause is not evidence on which we can sustain a verdict, that actually, I mean, it is a fairly clear through line through this court's precedent that mere suspicion... But I'm saying to conduct a search, it's more than suspicion. It's your acknowledgement that there was PC. And PC is still a long way from proof beyond a reasonable doubt. It's a long way from proof beyond a reasonable doubt, from even evidence that would support the finding of proof beyond a reasonable doubt. One other fact in the record, because I want to move to the floor 4B, and others may have different questions, but is it true, and honestly, I just don't remember the trial record. Is it true that at one point, Dr. Ortiz, when he was doing the anesthesiology or the surgery, he deliberately avoided the warmer that he's seen going to, to get an IV bag from one that was further away? Is that correct or not? There is trial evidence that he sought a bag from a source of outside warmer. More than once, right? I think there is. I don't know that they're like individual events like that, but I think there is evidence in which there was testimony in which somebody described that as happening through the summer. All right. So look, ultimately, what all of that is, is behavioral evidence. It is evidence that there is no video of anybody showing that shows him injecting a bag. There is no witness that saw him inject a bag. There was somebody who was present in the close quarters of an operating room at a time that the government hypothesizes that he would have been injecting a bag. And there is no statement by him. Ultimately, what the government has done very diligently and ably is assemble a lot of facts that ultimately are fundamentally ambiguous about what they show. What about the evidence from physicians and others that he filled syringes with medicine of some sort, mixed them in the syringes, put them in his pocket, went into an operating room? They said there was no medical basis for that. Well, there was a, I believe it's Ashley Burks, testified that that by itself is, there was testimony from a doctor that he could not see a medical reason for that. There's also testimony by the nurse that that is not necessarily suspicious in and of itself. But that's conflicting. It's, I mean, isn't the jury entitled to resolve these fact issues? The jury is entitled to resolve credibility issues. The question is whether or not it can, whether or not the inferences that it is drawn from the facts are warranted or unwarranted inferences. In Ganji and in Martinez, this court said that whether an inference is warranted or unwarranted is an issue that is reviewed. Remind me in those two, did we reverse the jury verdict? It is rare when they're properly instructed, even as to be unreasonable doubt, that we'll step in and say, no. So in those two cases, we reversed jury verdicts. In Ganji, we certainly did. And what it stands for is that the fact that the evidence looks the way it would look if the defendant were guilty is not, does not support a verdict. It has to be something else. Um, just for my sake, with time, the 404B issue is, 404B can be radioactive. And here, of course, it was homicide evidence. So I guess I'll, I have a series of questions. One is what's the rule of law that you're drawing from your citation to Fortenberry? What are you saying Fortenberry stands for? Fortenberry stands for one of two propositions. First, it stands for the proposition, my position is it stands for the proposition that the defendant's guilt for an uncharged offense has to be established independent of the crimes alleged in the indictment. And alternatively, it stands for the little bit less strong proposition that if it cannot be established independent of the crimes stated in the indictment, then it is very unlikely to pay its way into the trial. Because if the defendant's guilt was established... So it's, the use of it is for the Huddleston portion of the 404B analysis. Whether or not it's more likely that he even did poison Dr. M.K.? Right. So, okay, and so how many different aspects of reversible error under 404B have you preserved and are you arguing? Huddleston error? Are you arguing Beecham error? Yes, both of those and I'm confident that you will find that both of those are... And which of the two do you think requires remand and would it allow for a remand for the balancing to be done under Beecham? Because it wasn't done here, was it? No, it wasn't done here. Did you argue in your brief that that alone is a basis to reverse and remand so that we get on the record the probative prejudice balancing? I can't say that I briefed the mere absence of findings. Okay, so I think that the relief that this court should offer is... I mean, the court can offer lesser relief than I've asked for. I don't want me to take that off the table, just being candid about what's in the brief. What the brief asked for is a new trial. Because there is, irrespective of the findings, no reasonable way to admit this evidence in this case. And the evidence was wrongful. And that's both no reasonable way because there's no connection to him, more likely than not, and also because the prejudice from homicide evidence substantially outweighs the probative value? Absolutely. And what would you admit is the probative value? The probative... The most probative that this can show is that there were not medical accidents. Yeah. Right. So for the jury to consider it for that purpose, they would have had to have blown through the limiting instruction. If you look at page 77 of the red brief, the government concedes that the limiting instruction prevented them from considering that evidence at all, unless it concluded that the defendant had performed the acts of injecting bags and putting them in the warmer. So the MK evidence had no significance to the case if you believed that the defendant was tainting bags and putting them into a warmer. And if the jury, by hypothesis, blew through the limiting instruction and considered it for a purpose that the district court did not authorize, certainly there is an enormous risk that it blew through its limiting instruction and told and convicted the defendant because he committed the terrible act of... The jury did hear that there were bad, bad cardiac consequences of the charged offenses. Absolutely. So why isn't the short little MK evidence just more of the same? Because somebody died. Yeah. Because somebody died. Also because of the way that it was presented in the case. It was presented through a grieving spouse watching somebody die in front... In complete surprise in front of his eyes and describing his lasting feeling of guilt that he didn't pull the IV out. Of course, there was no reason for him to feel guilty, but that is enormously emotionally powerful evidence. I think I could sit through a week of listening to anesthesiologists talk about cardiac arrest and be able to tell you about 10 minutes of it. But if I spent half an hour in a room watching somebody describe the death of their loved one, I would remember that for years. And so that is enormously... It is enormous... Had an enormous risk of prejudice. How much did the government focus on the agony of the death in its closing argument? Well, this is a matter I'm going to have to consult the brief. That's right. It was mentioned. It was mentioned, yeah. Yeah, in that description. So I don't think there's a reasonable way to say that this evidence was admitted. And given the overall structure of the case, I don't think that the government can carry its burden to show that the error was harmless. Or in our assessment of 404B, are we allowed to look at what Judge Godbee said at sentencing? Because you may recall at sentencing, he said, oh, as to the uncharged cardiac incidents, I would say they were caused by Dr. Ortiz beyond a reasonable doubt. So that would be a door slamming on the Huddleston question if we're allowed to refer to the sentencing as... Do you understand my question? Do you recall that statement? I do. Is that a sort of an ex post facto completion of the Huddleston inquiry? I mean, I think it does not have a lot of help for the procedural question of whether the factors were weighed well enough. If the court agreed with that determination, then the Huddleston Fortenberry problem would be more complicated. Although still, ultimately, there is no possible way that a jury or a judge could find that he killed MK without referring to the charged incidents in this case. All they can show is that she went to work that day. She came back with an ID bag. They can't even prove that it came from that surgical facility. They just can prove that because she accumulated back some other facilities. I actually would like to dip into my rebuttal time, if I may, to cover this. I've asked a lot of questions. I'm sorry. We'll let you reach out on rebuttal. Oh, thank you. May it please the court, Gail Hayworth on behalf of the United States. I'll turn first to the sufficiency issue. Viewing the evidence in the light that was favorable to the jury's verdict, there was more than enough evidence to support the jury's verdict on all counts. Ortiz challenges the sufficiency of the evidence, showing that one, the charged ID bags were poisoned, and two, that he was the one that poisoned them. But ample evidence supported both points. First, ample evidence showed that supported the jury's finding that each of the charged ID bags was tampered with and adulterated. As multiple witnesses testified, each of the charged victims experienced hypertensive episode in the summer of 2022 at Surgicare that was triggered by an IV bag that was taken from the warmer. Each of the charged victims, though of different ages, genders, with different treating physicians, and though undergoing different procedures, experienced the same distinctive and previously unseen constellation of symptoms. Symptoms that could not be explained by surgical procedures performed, the medications given during surgery, or the patient's underlying medical condition. But symptoms that could be explained by a tainted IV bag, and specifically a bag tainted with the very medications that Ortiz had ready access to at Surgicare. The charged victims who had their blood tested had chemicals in their blood that should not have been there, and the charged victim whose bag was tested and examined had a hole in the bag's wrapper and chemicals in its fluid that should not have been there. The case just came down to identity. The facts you've described show, I think, clearly the bags were tampered with or adulterated just as you charged them. But what connects Dr. Ortiz as distinct from other people in the facility? Is it just the video? It's more than the video. There's ample evidence showing that he is the poisoner. So the video is very strong evidence because it shows him placing the IV bag in the warmer before each of the charged incidents. And multiple witnesses testified that that action was highly unusual because that was not his job. And the people whose job it was to clean the OR and to put bags back in the warmer all testified that Ortiz never helped them with their job. When you say the bag, these warmers had many bags, correct? Correct. So I know I was focused particularly on the government's cross of Ms. Scavo, the defense witness. And the government each time phrased the question hypothetically because it's crossing in defense witness. If I told you one IV bag that Dr. Ortiz put in the warmer caused the patient for injury, would that concern you? Next question. If that happened not just once, but three times, Dr. Ortiz put a bag in the warmer and that bag hurt somebody, would that concern you? And the last one, the closing argument of the government to recap in August 4th, Dr. Ortiz put the bag in, nobody accessed the bags and then the bag that hurt Tammy Young is taken out. Did the government offer and can you point to any proof that each time the bag he put in was the bag that hurt people like Tammy Young? Yes, so there was evidence showing linking that him placing the bag with the bag coming out. The bag that poisoned, there was proof that as said in the cross that the very bag he put in was the bag that contained the poison or was there no proof about which bag came out? There was proof about which bag came out. I think that cross was just to show that that witness didn't know this part about Ortiz and so they were bringing that out. But yes, there was proof connecting that him placing it with a bag coming out. So particularly for TY, the surveillance video shows that the particular bag he put in was the same one taken out by the nurse and used in TY surgery. And that's GX6, GX5 and GX7. So 5 and 7 are the shorter versions, GX6 is the longer one. But after Ortiz places a bag in the warmer, either it or light reflecting off of it, which the defense disputes, is visible through the slit of the warmer's door. It is visible again when Ortiz opens the warmer to check on the bag about 13 minutes later and it is visible again when the nurse opens the warmer to get the bag for TY surgery. But it is no longer visible after the nurse takes the bag out of the warmer, demonstrating that what Ortiz put in is what the nurse took out. Now for KP, the surveillance video combined with Dr. Marsden's testimony shows that it was the same bag because the surveillance video shows that he put the bag in and about seven minutes later, the anesthesia tech comes and takes it out and Dr. Marsden testified that the bag he used in KP surgery was cold. And the only one that could have been cold, the only one that was not in the warmer long enough to warm up, according to the surveillance video, is the one Ortiz placed in. On that same day, August 19th. So why would he take a cold bag instead of a warmer? Well, he testified that normally, he was going to joke with the anesthesia tech about why did you bring it? But then because they were already finishing up the surgery, he thought I'm not going to give her that much fluids. It's mainly about comfort level, the temperature and comfort for the patient because he wasn't expecting to give her that much because the surgery was done. She was about to go to recovery, to the recovery room. So he thought it's not that big of a deal to use this cold bag. You recall my questions about the rebuttal witnesses and the answer was that when the Rule 29 motion was filed, that evidence wasn't in. Was there anyone in the case in chief that testified that Dr. Ortiz never went to the warmer? Because there was defense witness testimony, droplets, I think Dr. Droplets said, no, that's not surprising. Doctors would get the IV bags. They would get them syringes. What's more unusual is that he put a bag in. It's not so much taking it out. Sometimes doctors took it out. It was rare. Nurses would get it, but sometimes the doctor would if everyone was busy. What was more rare and what was unprecedented, not seen in the video of any other doctor doing it is putting a bag in. And yes, there was evidence, multiple witnesses testified that that was not his job and he never helped people that was their job to put bags in the warmer. He never helped them do their job. Just so you have plenty of time because I have a lot of concerns about the 404B. But we may loop back, others may. I mean, there was a clear opposition to the government's 404B notice and the opposition had four portions. It said not more likely than not him, the Huddleston issue, then repeatedly said do the Beecham analysis and that it even said if you're going to admit this, do it with a limiting fashion, maybe not the husband describing the wife screaming. My question to you is where did the district court do any of the required 404B analysis? Well, the defense has to ask for that. No, and I've just said to you, at least from my standpoint, looking at the opposition to the 404B, the defense asked for it every possible way, citing Beecham multiple times, citing Huddleston. Can't imagine a more clear preservation of, you've got to do everything under 404B before you can, in an adulteration case, turn it into a homicide case. So I respect if you say that they didn't preserve it, but that's hard for me to accept looking at their opposition to your 404B notice. Well, the court didn't rule on that specifically at the time. During trial, the court then finds that the other episodes, the other poisonings that were not charged, that that was intrinsic. And that's at 1704. Okay, so that would make 404B irrelevant. Yes. But you told the jury in closing, the other incidents, including the death of Dr. Casper, are not charged. The government's position to the jury was, you're going to hear this is uncharged evidence. And that's why you asked for a 404B instruction. It is uncharged, but you can have uncharged offenses be intrinsic. Okay, so is the government... I'm finding this difficult to accept. The government's position is that the homicide evidence months earlier, outside the clinic, was intrinsic? It was their position that it was intrinsic because it was part of the story of the crime. That it was... But you didn't even charge an overarching scheme. You just charged specific incidents of adulteration all in August. This is something that happened in June. Right. So what's your best case that a murder months earlier, not in the context of the charge, tampering and adulteration, is intrinsic? What's your best case? I guess the cases that establish what an intrinsic means, I guess age would be one of them, where it defines what it is. But also the Gorilla case that the defense cites for whether or not it's intrinsic. And under that reasoning, where it found a prior offense, a sexual assault, was intrinsic to the conspiracy to commit murder because it was a part of telling... Sure, sexual assault that ends up in murder. But a homicide that the government then, in its indictment from a grand jury, turns into a tampering case. Then they walk into trial and put on a murder case? That's intrinsic to adulteration and tampering? Well, it's not. It's a part of the same... It's an uncharged offense that arose from the same series of transactions. And it's of the same nature as the charged offenses. It was triggered by the same triggering event. And that's why it tells the story. But isn't that exactly what 404b says you can't do? You can't charge something that's sort of anodyne. And then you come into jury and you prove something months earlier that is utterly heinous in nature. But because you don't actually charge a count saying it, you don't have to prove it beyond a reasonable doubt. All you have to do is just put the husband on. I'm really... I'd be very challenged. I'd love to hear your best case that this is intrinsic. The government can say something's intrinsic, the grand jury presented on it, but the government didn't even charge it as a count, a standalone count. That's intrinsic? I would say... I would go back to the definition, too. It's an uncharged offense that arises from the same series of transactions. It completes the story of the crime. And it's intertwined with the other evidence of crime. Because it links all the other charged offenses to the motive. But that's 404B argument. It's motive proof. And that's why the court doesn't really need to decide if it's intrinsic or not. Because even if it was 404B, they were instructed on the 40B. It got in the instruction in abundance of caution. True, but my questions legally, based on Fifth Circuit precedent, are antecedent to that. They said, we want you to have a Huddleston inquiry. You've got to make that proof before you introduce this seismic stuff to the jury. And then they said, we need the balancing done. And as I read it, the only thing the court did before trial is, say in the pre-trial, one sentence. I'm going to prevent 404B stuff. That's what he called it, stuff. That's right. Do you know of anything else he did? Well, he limited it to 40B stuff regarding the prior conviction. Did he ever even discuss any of the homicide as legitimate 404B? He said he was going to deal with it during trial as the evidence comes in. So that he can better understand how it fits with everything. OK, just what's the record site for when he actually did the balancing? That it's probative value substantially outweighed. That prejudice didn't substantially outweigh probative. Where, when he finally got to it in trial, did he do the Beecham analysis? Well, when it was coming in and it got to in trial, it's at 1704. That's when he says, I believe it's intrinsic. OK, so in other words, the answer is he never did a Beecham analysis. He didn't because he thought it was intrinsic. That's right. So if he's wrong as to it being intrinsic, we would have to reverse and remand at least for him to do the balancing? No, because they never objected and said, well, let's do, can you please do it an explicit balancing on the record? I know, but they did ask for that at the outset. You don't have to re-object. Well, my understanding of the case law is you do have to re-object when it's coming in and when he's addressing it. So he didn't address it for the first time because he's like, I need to see how the evidence comes in, how it fits together. So then when he sees that and he's making that determination, they arguably, they should have objected and asked for that balancing. And anyways, even if the court, it doesn't, intrinsic and extrinsic doesn't matter here because you still have to do a balancing and that balancing was not erroneous here. But it wasn't done. So you're asking us to do it in the first instance? The 404B, the balancing has to be explicitly done when it's asked for, to be explicit. So your argument depends on the notion that even though they did explicitly ask for a pretrial and he said, no, I'm letting in the stuff, the fact that they didn't ask for it again, is that the argument here? My argument is on appeal, they are not taking issue with the explicit balancing on the record. They're taking issue with the balancing. And so the balancing is supported by the record. Okay, I agree with that. So they've waived any issue. So let's do the balancing. Let's assess it. Here, there was no limitation on the husband at all. So he was even able to describe her screams and he described watching her put in a body bag. How in the world is that not inflaming a jury? The other, just because like the other victims also testified to what they went through, which was equally compelling. Equally compelling. They went off for further surgery. They survived. But there was no one that had a husband saying, she's screaming. I wish I'd pulled that out of her. I watched her die. I watched her put in a body bag. What is the probative value? That's what is the probative value of this event? It's like all the other... Probative value is strong. As to what issue? As to, it shows what that the bag was causing the issue. Because MK, under like all the other episodes, was not in surgery at the time. So much of the trial was spent on all these other reasons that the defense offered for what caused it. So the probative value was to rebut the defense. It removes the noise of all the other issues the defense was bringing. Okay. I saw that phrase in your brief, removes the noise. What case anywhere under 404B says that that's valid 404B? It removes the noise. What does that mean? It means that it's probative for showing what caused the poisonings. Because it's addressing and rebutting arguments the defense are making regarding causation. So that's why it's probative. And then if it shows the bag is what caused it, that makes it, that's relevant. We don't even know the bag that she used even came from this center. So if anything, it's far less probative, right? We don't know where her bag came from or is there a point in the trial that confirms where that bag came from? There was sufficient evidence to show where the bag came from under Huddleston to show that it came from Surgicare. Because she worked at Surgicare on the day that she came home and administered the bag to herself. She died after using that bag. And then the bag's manufacturer received no complaints from other IV bags from anyone else but Surgicare. And there was no evidence that there were any tainted bags at any other facilities that she worked at. So you can deduce from that, especially under Huddleston's by reponderance of the evidence that it was a bag that killed her that she came back from, that she brought back from Surgicare. You keep going, I've asked a lot of questions and thank you for all your answers. And just regarding the provative value issue versus, it has to be substantially outweighed by prejudice and the court did not err in not finding that it was here because arguably it's of the same nature. Defendant, like the argument that one poisoning that results in death is so much worse than four poisonings that merely resulted in death. And then for one, the patient's heart actually stopped. Those are of the same nature. They're of the same magnitude. Is this also a harmlessness argument? Even if there was 404B? Yes, it's also a harmlessness. But the harmless argument is mainly because under this court, this is repeatedly held that your erroneous submission of evidence is harmless where even without it, there was more than enough evidence to convict the defendant. And here, even without the MK evidence, the evidence of Ortiz's guilt was overwhelming and that's an age Williams and they do where they find harmlessness on those grounds. So you have that it's of the same magnitude. It didn't take up a large portion of the jury's time it was a very small portion of the trial, about 2% of the testimony. And then the district court's charge mitigated any prejudice that the jury would have convicted Ortiz because of the MK offense rather than the charged offenses that took up the vast majority of the jury's time by cautioning the jury to consider only the crimes charged and emphasizing that Ortiz was not on trial for any act, conduct or offense not alleged in the indictment. So given the limiting instruction, the evidence is brevity, the fact that the poisoning was not so much worse than the charged offenses, it was the same nature of the same act done with the same intent as well as the great deference that this court gives to a trial court's rule of 403 balancing, Ortiz cannot show that the district court abuses discretion by letting in the MK evidence. If the court has no further questions on any of the other issues, we ask you to affirm. Thank you. May it please the court. A few points on the 404 issue. The first is that under Powell and Taylor, even if evidence is intrinsic, it still has to satisfy 403, particularly if it is not a literally evidence of the act that is the charged offense. So even if the government's theory about how this can be intrinsic evidence is correct, there's still a balancing test that has to be undertaken substantively in order to admit the evidence. Second, there is no, in my opinion... But when it comes up, it is rebutting your case because it is the only way they can prove that the cardiac arrests were not medically induced. It's the only bag situation connected to him where no one could say she was ill or the doctor screwed up. Well, it's not a bag situation connected to him. I'm sorry? I disagree that it's a bag situation. But that's back to the Huddleston question. Right. So, but it is... That is not the government's position when it deals with the sufficiency claims as to the poisonings. The government's experts testimony and the government's position before this court is that the unique constellation of symptoms that occurred in four cases of people of different ages and genders and medical conditions necessarily demonstrates that there was poisoning. Just because your time is limited. The three difficulties I have, I mean, I have a huge concern whenever the government offers 404B evidence, especially if it's homicide evidence. But you were candid that you haven't really presented in your brief that the irreversible error here is the failure to do on the record either of the two. You're nodding, that's correct? That's correct. So you want us to just look at the record ourselves and decide just the substantial prejudice. Does the prejudice substantially outweigh the probative value? One. And you want us to decide it's not harmless. That's exactly right. I think that the court can, even though it's not the leaf that I've asked for, to give a limited remand and do the balancing. It can do that under 28 U.S.C. 21. The trouble is on Huddleston, if we do that, the judge would just say, well, look at what I said in sentencing. It proved beyond a reasonable doubt he was the guy. I mean, that's a fact finder's firsthand impression. I mean, I think that we can say that the court found that there was a presentable case of his guilt for that, that it could go to a jury. It's just not correct. Remind me of the evidence. M. Cash, they found the same drug in her body that was found in others. Is that correct? They found bupivacaine in her body. There is one lab that said that there was bupivacaine in J.A. and K.P.'s body and another lab that said these are below a reportable cause. So there's, I'm not sure what the answer is there. On sufficiency and overwhelming proof, government counsel pointed to evidence that actually it was the very bad. At that point, that's pretty overwhelming. The government's evidence that this was the very bad is its screenshots that it says show that there's a spot of light which is visible through the crack. If it were that obvious, that would have been presented or argued to a jury. That is a creation of my able colleague going back through the evidence herself to produce that argument and screenshots on that point. The screenshots weren't shown to the jury? They came from a video that was shown to the jury. Screenshots were not. But during the testimony, was it brought out that you could see through the slot? If I'm wrong about that, I'd certainly invite my colleague to inform the court otherwise in a letter. So it wasn't brought out by a witness and it wasn't made by the government in closing either? No. And that's why I say, ultimately, it's a spot of light that you could see what you want to see ultimately. I do want to point out on the 404 issue that even if the court believes that there is a supportable case that the defendant was guilty of that poisoning, at the very least, the weakness of that claim weakens the probative value of that to the point where it can be spot by its enormous prejudicial effect. Five seconds on your 615 point. Please reverse it. Thank you.